UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOMESTEAD COUNTRY PROPERTIES, LLC, <br>     *Plaintiff*, <br>     *v.* <br> AMERICAN MODERN HOME INSURANCE COMPANY, <br>     *Defendant*. | Civil No. 3:12cv1003 (JBA) <br><br> July 12, 2013 |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Homestead Properties, LLC filed this insurance coverage suit against Defendant American Modern Home Insurance Company alleging that Defendant breached its duty to defend and its duty to indemnify under the relevant insurance policy, and that Defendant violated the Connecticut Unfair Insurance Practices Act and the Connecticut Unfair Trade Practices Act. (*See* Compl., Ex. A to Notice of Removal [Doc. # 1].) Defendant moves [Doc. # 36] for summary judgment on Plaintiff's claims for breach of the duty to defend and the duty to indemnify.[1] Plaintiff also moves [Doc. # 33] for summary judgment in its favor on these claims. For the following reasons, Defendant's motion for summary judgment will be granted, and Plaintiff's cross-motion for summary judgment will be denied.

---

[1] In their Joint Rule 26(f) Report [Doc. # 15] the parties represent that Plaintiff agrees to withdraw its CUIPA and CUTPA claims in Count Two of the Complaint if the Court grants summary judgment in favor of Defendant on the breach of the duty to defend claim in Count One. However, if summary judgment is not granted to Defendant on Count One, the parties agree to submit separate dispositive motions regarding Count Two within 240 days of the Court's ruling on the pending motions.

I.      **Background**[2]

Plaintiff owned the real estate and dwelling located at 76 Canal Road in Granby, Connecticut.  In August 2007, Defendant issued insurance policy number 0770045929771 ("the Policy") to Plaintiff, which covered the property at 76 Canal Road.  (*See* Policy, Ex. A to Stmt. of Stipulated Facts [Doc. # 39].)  The Policy was effective from August 1, 2007 through September 28, 2008.   In September 2008, Plaintiff submitted a claim for mold damage and remediation under the Policy. (*See* Claim Tr., Ex. C to Stmt. of Stipulated Facts.)  During an inspection of the home, Plaintiff had discovered mold in the basement ceiling and in the attic close to the roof.   Defendant sent an adjuster to the property to inspect the damage (*see* Adjuster Report, Ex. E to Stmt. of Stipulated Facts), and ultimately denied the claim because the mold had not been caused by a covered peril under the Policy (*see* Denial Letter, Ex. D. to Stmt. of Stipulated Facts).

On September 28, 2008, Plaintiff transferred title to the property at 76 Canal Road to Risa Strickland.  On December 30, 2009, Ms. Strickland filed suit against Plaintiff in Connecticut Superior Court, alleging, *inter alia*, that Plaintiff negligently misrepresented that the septic system at 76 Canal Road functioned properly, and that in doing so, Plaintiff had breached the purchase contract for the property.  (*See* Strickland Compl., Ex. B to Stmt. of Stipulated Facts.)  In the Strickland Complaint, Ms. Strickland alleged that Plaintiff had failed to inform her that the property had a history of septic tank failures, and that although the premises had been marketed as a four-bedroom home, the property could only support a septic system sufficient for a two-bedroom home.  (*See id.*)  On March 28, 2011, Plaintiff tendered the claims for defense of and indemnification for the

---

[2] The factual and procedural background is based on the Statement of Stipulated Facts [Doc. # 39] submitted by the parties.

2

Strickland lawsuit to Defendant. On June 24, 2011, Defendant denied it had any obligation to indemnify or defend Plaintiff from the Strickland lawsuit under the Policy. After Defendant denied Plaintiff's claim for defense and indemnification, Plaintiff entered into a Stipulated Judgment in favor of Ms. Strickland.

II.     Discussion[3]

    A.     **Duty to Defend**

In Count One of the Complaint, Plaintiff alleges that Defendant breached its duty to defend under the Policy by denying Plaintiff's claims for defense and indemnification related to the Strickland lawsuit. Defendant argues that it was not obligated to defend Plaintiff against the Strickland lawsuit under the Policy, because the Strickland Complaint did not allege damages caused by an "occurrence" within the policy period, because the Strickland negligent misrepresentation claim did not allege "property damage" arising out of the ownership maintenance or use of the property, and because coverage for the claims in the Strickland Complaint was excluded under the policy exclusion for property damage to property owned by the insured.

---

[3] "Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

"The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." *Wentland v. Am. Equity Ins. Co.*, 267 Conn. 592, 599 n.7 (2004) (internal quotation marks and citations omitted). As the Connecticut Supreme Court has explained:

> It is beyond dispute that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the complaint. The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts [that] bring the injury within the coverage. If an allegation of the complaint falls even possibly within the coverage, then the [insurer] must defend the insured. Accordingly, an insurer's duty to defend its insured is triggered without regard to the merits of its duty to indemnify.

*Id.* at 600 (internal quotation marks and citations omitted).

Under the terms of the Policy, Defendant covers Plaintiff's "legal liability for bodily injury or property damage[4] arising out of the ownership, maintenance or use of the insured premises. The bodily injury or property damage must be caused by an occurrence[5] during the policy period." (Policy, Premises Liability Endorsement at 1.) However, the Policy excludes from this coverage "property damage to property owned or occupied by or rented to [Plaintiff] or [Plaintiff's] employee. (*Id.* at 3.) Defendant argues that the allegations of the Strickland Complaint—i.e., that Plaintiff's negligent

---

[4] The Policy defines "property damage" to include "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." (*See* Policy, Premises Liability Endorsement at 5.)

[5] The Policy defines "occurrence" as "an accident, including continuous or repeated events or exposure to conditions which results in bodily injury or property damage neither expected nor intended by any insured." (*See id.*)

4

misrepresentation that the septic system was functioning properly induced Ms. Strickland to purchase the property, and as a result she suffered damages including the cost of repairing the system and the reduced residential capacity of the dwelling—does not fall even possibly within the coverage of the Policy because negligent misrepresentation is not an "occurrence" within the meaning of the Policy, a claim for negligent misrepresentation alleges economic or contract damages, rather than "property damage" as that term is defined in the Policy, and the alleged damage is excluded under the property owned by insured exclusion.

In *Thompkins v. New London County*, No. CV 9762684S, 2000 WL 233312 (Conn. Super. Ct. Feb. 15, 2000), the Connecticut Superior Court considered a similar argument and determined that negligent misrepresentation was not an "occurrence" under Connecticut law. In *Thompkins*, the underlying complaint alleged that the plaintiff had negligently failed to disclose a pre-existing termite infestation prior to the sale of a home. *Id.* at *1. The court, interpreting a similar policy definition of "occurrence," reasoned that "[w]hether the term 'accident' is to be construed as either the underlying cause, wood devouring insects, or the underlying result, structural damage, it is clear that under either interpretation, the occurrence which caused the property damage, *was not caused by the fact of non-disclosure*," and concluded that the defendant had no duty to defend against the underlying suit. *Id.* at *2 (emphasis in original). Similarly, in the Strickland Complaint, Ms. Strickland claimed damages for the uninhabitability and the diminished value of the property, alleging that the septic system had failed on numerous occasions prior to her purchase of the property, and that even a repaired septic system could only sustain a two-bedroom house due to "the condition of the land, the available space, and the extremely high groundwater." (*See* Strickland Compl. ¶¶ 25–26.) Both the failure of

5

the existing septic system, and the conditions precluding the property from sustaining a four-bedroom septic system existed prior Plaintiff's alleged negligent misrepresentation, and neither source of damage was caused by the alleged misrepresentation. Thus, as was the case in *Thompkins*, there is a mismatch between the damage and the occurrence in this case because Ms. Strickland's damages were caused by her detrimental reliance on Plaintiff's representation, but Plaintiff's failure to disclose the condition of the property did not cause the underlying conditions of which Ms. Strickland complained.

Similarly, in *Electric Ins. Co. v. Santo*, No. CV064011494S, 2007 WL 2428810 (Conn. Super. Ct. Aug. 6, 2007), the Connecticut Superior Court determined that the insurer did not have a duty to defend where the insured was sued for negligent misrepresentation for failing to disclose a condition rendering the woodstove and chimney on the property unusable. While the *Santo* court did not reach the question of whether or not a negligent misrepresentation could constitute an "occurrence" under an insurance policy, it surveyed case law from multiple jurisdictions recognizing "that courts are virtually unanimous in their holdings that damages flowing from misrepresentations and/or fraud have no basis [as] property damage; rather, the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage afforded by [homeowners] policies." *Id.* at *4 (internal quotation marks and citations omitted). Thus, the court concluded that although the homeowners were suing for damages resulting from their inability to use part of the property, the underlying complaint had not alleged "property damage" within the meaning of the defendants' insurance policy:

> [W]hile the policy at issue, like the plaintiff's policy includes loss of use as a form of property damage, this fact does not alter the principle that a claim for negligent misrepresentation in connection with the sale of a

6

> home is a claim for economic or contractual damages, not property damages. Pursuant to this persuasive reasoning and authority, the [homeowners] have not alleged claims of property damage under the terms of the policy. While the [defendants'] alleged misrepresentations regarding the condition of the property may have caused the [homeowners] to incur economic losses, the misrepresentations did not damage the property or cause them loss of use thereof.

*Id.* at *5 (internal quotation marks and citations omitted). Similarly, in the present case, although Ms. Strickland alleged that the faulty septic system rendered the premises uninhabitable, that loss of use was caused by a pre-existing underlying condition of the property, rather than by Plaintiff's alleged misrepresentation. The damages incurred by Ms. Strickland arose from her detrimental reliance on Plaintiff's representations regarding the septic system, and as such the damages claimed in the underlying suit represent economic, rather than property, damage.

Plaintiff relies on *Fuentes v. New London County Mutual Ins. Co.*, No. CV065002176, 2009 WL 2503501 (Conn. Super. Ct. July 16, 2009), where the plaintiff had been sued by the purchaser of the property for negligently failing to disclose the presence of lead paint in the home that subsequently caused injury to a child residing in the home.[6]

---

[6] Plaintiff also cites a case from the Supreme Court of Maryland, in which the court concluded that the insurer had a duty to defend the insured against a lawsuit by a purchaser alleging that the insured had negligently misrepresented that the septic system was functioning normally. On the basis of this representation, the purchaser with a family too large for the system moved in, causing the system to break down. *See Sheets v. Brethren Mutual Ins. Co.*, 342 Md. 634, 645–46 (1996). However, *Sheets* applied Maryland law, and in fact appears to be an outlier on this question. *See Santo*, 2007 WL 2428810, at *4 (collecting cases). Furthermore, in *Sheets* the court relied on the fact that the insured could not have foreseen the consequences of his alleged misrepresentation because the system had in fact functioned properly while he lived there with his family of four, and it was only once the purchaser, with his family of eleven, moved in that there were any problems with the system. *Id.* at 657–58. In contrast, Plaintiff's property had a long history of septic system failures that predated Ms. Strickland's purchase of the property.

The *Fuentes* court concluded that negligent conduct may constitute an "accident" and that the claimed negligent representation was therefore an occurrence under the policy. *See id.* at *3. However, the *Fuentes* court was careful to distinguish *Santo*, in which the alleged property damage predated the alleged misrepresentation. *See id.* ("The court [in *Santo*], dealing with whether property damage is covered by the insurance policy in a negligent misrepresentation case, noted that the property damage is not relevant to the misrepresentation as it predates the misrepresentation. As such, the misrepresentation that occurred afterwards cannot be claimed under the insurance policy. . . . However, this case is different since it deals with bodily injury that occurred after the representation.") Thus, in *Fuentes*, unlike in the present case, the alleged damage in the underlying suit post-dated the misrepresentation, such that a causal relationship between the alleged occurrence and the alleged damage could be inferred from the underlying complaint.

      While the Strickland Complaint does allege that the septic tank failed, which failure could constitute an occurrence, and that this failure caused "property damage" in that it rendered the property uninhabitable, this property damage lacks any nexus to Plaintiff's negligent misrepresentation, which is the claim for which Plaintiff argues Defendant breached its duty to defend. Even if the Court were to follow *Fuentes* to conclude that a negligent misrepresentation can constitute an "occurrence" within the meaning of the policy, the damage claimed in the Strickland lawsuit does not constitute "property damage" within the meaning of the policy because the damages flowing from that occurrence, i.e., Plaintiff's negligent misrepresentation that the septic system functioned properly, were economic damages arising from Ms. Strickland's detrimental reliance on the misrepresentation, and were outside any possible Policy coverage for property damage caused by an occurrence during the policy period. Defendant therefore

had no duty to defend against the Strickland lawsuit.[7]  For these reasons, Defendant's motion for summary judgment is granted as to Count One.

### B.  Duty to Indemnify

In Count Three of the Complaint, Plaintiff alleges that Defendant breached its duty to indemnify under the Policy by denying Plaintiff's first-party claim for mold damage.  Defendant argues that because the mold damage was not caused by one of the insured perils under the Policy, had no duty to indemnify Plaintiff.  The Policy states that it insures "for direct physical loss to the property covered caused by fire or lightning, internal explosion . . . , windstorm or hail . . . , explosion . . . , riot or civil commotion, aircraft . . . , vehicles . . . , smoke . . . , [or] volcanic eruption." (*See* Policy at 3.)  After inspecting the property, Defendant concluded that the mildew was caused by moisture without an opening caused by wind, and thus had not been caused by an insured peril under the Policy.  (*See* Denial Letter.)  Therefore, Defendant argues, it properly denied Plaintiff's claim for mold damage.[8]

---

[7] Furthermore, even if the Court were to construe the Strickland Complaint as alleging property damage in that the property was uninhabitable, that loss of use damage is clearly excluded by the Policy's exclusion for property owned by the insured.  Because the claimed failure of the septic system and underlying conditions of the property rendering it uninhabitable and unable to support a four-bedroom home were alleged to have existed prior to the sale of the property, i.e., while Plaintiff owned the property, it was expressly excluded by the Policy.  *See Thompkins*, 2000 WL 233312, at *3 ("Furthermore the underlying complaint alleged that the damage caused by the insects existed for several years prior to the date of sale, and the policy excludes liability coverage for damage which existed during the time that the property was owned, occupied, used, or in the care of the insured.").

[8] Defendant also argues that even if the mold had been caused by one of the named perils, coverage is likely excluded under the water damage exclusion to the Policy.  However, because the Court concludes on other grounds that there was no coverage for Plaintiff's mold claim, it need not reach this argument

Plaintiff does not dispute that the mold damage was not caused by an insured peril. Rather, Plaintiff argues that Defendant is improperly attempting to interpose a "fortuitous cause" requirement on coverage under the Limited Fungi, Wet or Dry Rot, or Bacteria Endorsement to the Policy. Plaintiff analogizes to "collapse coverage" under Connecticut law, which does not require an additional "fortuitous cause" other than a breakdown or loss of structural strength for coverage to be triggered under a policy. *See Beach et al. v. Middlesex Mutual Assurance Co.*, 205 Conn. 246 (1987). Defendant counters that by its clear terms, the Limited Fungi, Wet or Dry Rot, or Bacteria Endorsement modifies only the Premises Liability portion of the Policy, and has no effect on the first-party Property Liability portion of the policy. Therefore, Defendant argues, requiring the mold to be caused by an insured peril does not create a "fortuitous cause" requirement because the endorsement does not apply to first-party coverage. The title of the endorsement clearly states that it is a "Premises Liability" endorsement, and none of the terms of the endorsement purport to amend any part of the Policy other than the Premises Liability portion. Thus the Limited Fungi, Wet or Dry Rot, or Bacteria Endorsement does not apply to first-party coverage under the policy. Therefore, for Plaintiff's claim to be covered, the mold must have been caused by one of the perils insured against in the Policy.[9] Because there is no factual dispute that the mold at issue was not caused by an insured peril, the Court grants summary judgment in favor of Defendant as to Count Three.

---

[9] At oral argument, counsel for Plaintiff argued that such an interpretation would strip the endorsement of all legal meaning. However, as counsel for Defendant acknowledged, this interpretation does not strip the endorsement of all meaning because a claim for bodily injury resulting from exposure to mold would be covered even if the mold in question had not been caused by an insured peril.

### III. Conclusion

For the foregoing reasons, Defendant's Motion [Doc. # 36] for Summary Judgment on Counts One and Three is GRANTED, and Plaintiff's Cross-Motion [Doc. # 33] for Summary Judgment on Counts One and Three is DENIED. Since this disposition triggers Plaintiff's agreement to abandon Count Two, this case can now be dismissed.

IT IS SO ORDERED.

       /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 12th day of July, 2013.